UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of an *Ex Parte* Application to Delay Notice Pursuant to the Right to Financial Privacy Act, 12 U.S.C. §§ 3401, *et seq.*, of Two (2) Investigative Subpoenas of the Commodity Futures Trading Commission, <br><br>Applicant. | ) ) ) ) ) ) ) ) **FILED UNDER SEAL** ) ) ) ) |

### MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR *EX PARTE* ORDER TO DELAY NOTICE OF INVESTIGATIVE SUBPOENAS PURSUANT TO 12 U.S.C. § 3409

The Commodity Futures Trading Commission ("CFTC") submits this Memorandum of Law in support of its *Ex Parte Application to Pursuant to the Right to Financial Privacy Act, 12 U.S.C. §§ 3401, et seq., of Two (2) Investigative Subpoenas of the Commodity Filed Futures Trading Commission* ("Application"). Pursuant to Section 1109 of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3409 (2012), the Application seeks an *ex parte* order that would: (1) delay for ninety (90) days service of notice of two (2) investigative subpoenas for records pertaining to bank accounts held by Brenton Walker and Tjuana ("Tia") Walker; and (2) prohibit Wells Fargo Bank, N.A. ("Wells Fargo") and Metabank, the financial institutions to which the investigative subpoenas will be directed, and their officers, employees, and agents, from disclosing that such records have been obtained or that such a request for records has been made by the CFTC. The investigative subpoenas (unsigned copies of which are attached as Exhibit A to the Application) seek access to records of accounts that the Brenton Walker and Tia

1

Walker are suspected of using to misappropriate fraudulently solicited investor funds, and/or to engage in commodity futures and/or retail foreign exchange ("forex") transactions.

A.  **BACKGROUND**

The CFTC is an independent federal regulatory agency that is charged with the administration and enforcement of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* (2012), ("CEA") and the regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2018) ("Regulations"). The CFTC's mission is to protect market participants and the public from fraud, manipulation, abusive practices, and systemic risk related to commodity interests and to foster transparent, open, competitive and financially sound markets.

The CFTC is currently investigating whether Brenton Walker and Tia Walker have engaged or are engaged in violations of the Act and/or Regulations in connection with their operation of a company known as CBAL Capital. CFTC staff has been unable to locate a corporation registration for CBAL Capital LLC or a website. Brenton and Tia Walker appear to be residents of California. Neither Brenton nor Tia Walker has ever been registered with the CFTC.

The Division received a complaint from a woman alleging that in 2017, her husband met with Ms. Walker while he was receiving care at a cancer treatment center. Ms. Walker introduced the complainant's husband to her son, Brenton Walker. At this meeting, Brenton Walker represented that he was achieving great success investing in foreign currency exchange ("forex") through his company CBAL Investments. In reliance on Brenton Walker's representations about his trading success, the complainant's husband gave Brenton Walker two personal checks for $10,000 each for investment in forex. After signing a letter investment agreement, the complainant's husband wired $100,000 into Tia Walker's personal bank account

for Brenton Walker to invest in forex. From these investments, $20,000 was returned to the customer. Shortly, thereafter the complainant's husband died in 2017.

Despite assurances that he would send the customer monthly updates to the complainant, Brenton Walker did not do so. On or approximately on July 16, 2018, Brenton Walker sent a mass text message to undisclosed recipients, one of whom was the complainant, stating he was closing all client accounts. The wife of the deceased customer did not receive any additional funds back, despite having entered into a promissory note for Brenton Walker to make payments to her. Brenton Walker cut off all communication except for sending the complainant a purported forex account statement.

Based upon this complainant's information, the CFTC issued a request to all registered futures commission merchants ("FCMs"), pursuant to its authority under Section 4(g)(a) of the CEA, 7 U.S.C. §6(g)(a) (2012), seeking all reports, books, and records pertaining to, among others, Brenton Walker and Tia Walker. This request revealed that both Brenton and Tia Walker had funded trading accounts at an FCM, Gain Capital. A preliminary review of those records indicates that Tia Walker deposited $60,000 in her Gain Capital trading account, which appears to have come from her Wells Fargo bank account. The complainant customer's husband sent his $100,000 wire to that same Wells Fargo bank account shortly before the $60,000 deposit into Ms. Walker's Gain Capital account. When asked by Gain Capital about the source of trading funds, Ms. Walker sent Gain Capital a copy of her Wells Fargo bank statement showing the $100,000 deposit from the complainant customer's deceased husband in May 2017. Ms. Walker explained to Gain Capital that the money was from a "client of my marketing company."

Mr. Walker appeared to only deposit $12,400 in his Gain Capital trading account from a debit card linked to a bank account with Metabank. Both Walkers' Gain Capital accounts lost

approximately 50% of their value within months, the remaining amounts withdrawn, and the trading accounts were closed.

In order to determine whether the Walkers have violated or are violating any provision of the CEA and/or Regulations, the CFTC needs to, among other things, review the records of the Walkers' personal accounts at Wells Fargo and Metabank. Specifically, the CFTC needs to review these records in order to ascertain the names of customers that may have invested (or believed they were investing) with CBAL Capital, the total amount of funds invested, and the ultimate disposition of those funds, including whether any of the funds were used in forex trading by the Walkers or otherwise misappropriated.

Under the RFPA, if the CFTC were to issue investigative subpoenas to Wells Fargo and/or Metabank for the Walkers' personal bank account records, the CFTC would be required to first notify the Walkers of the subpoenas and to wait fourteen (14) days before obtaining any records in order to afford the Walkers an opportunity to quash the subpoenas. *See* 12 U.S.C. §§ 3405 and 3410(a). Given that this matter possesses many of the earmarks of fraudulent solicitation and misappropriation, the requested Order delaying disclosure of these investigative subpoenas is necessary to enable the CFTC to complete its investigation and, if necessary, ultimately to seek a court order to freeze the Walkers' accounts in order to preserve any remaining customer funds.[1]

**B.     LEGAL ANALYSIS**

The RFPA provides that the CFTC may not "have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution"

---

[1] Section 6c of the CEA, 7 U.S.C. § 13a-1, provides, among other things, that at the same time the CFTC files an enforcement action for a violation of the Act and/or Regulations, it may obtain an *ex parte* restraining order freezing a defendant's assets and prohibiting the defendant or other individuals from destroying, altering, or disposing of books, records, and other documents.

4

unless disclosed in response to an investigative subpoena or summons meeting the requirements of § 3405. *See* 12 U.S.C. § 3402(2). In turn, Section 3405 generally requires, among other things, that the CFTC provide a specified notice to the individual customer of the financial institution from which records are sought and wait fourteen days before securing compliance with the subpoena. That 14-day delay is extended further if the customer files a motion to quash the subpoena. *See* 12 U.S.C. § 3410.

This statutory notice period, however, may be delayed. Pursuant to 12 U.S.C. § 3409(a), a court may issue an *ex parte* order delaying the customer notice, upon an application for delay of notice, which shows that:

(i) the investigation being conducted is within the lawful jurisdiction of the Government authority seeking the financial records;

(ii) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; and

(iii) there is reason to believe that such notice will result in destruction of or tampering with evidence and will seriously jeopardize the CFTC's investigation.

The CFTC respectfully submits that each of these components is present in this case and requests that an order of delay be entered.

**1.    The Investigation is Within the Jurisdiction of the CFTC**

The CFTC has jurisdiction to conduct investigations by virtue of Section 8(a)(1) of the CEA, 7 U.S.C. § 12(a)(1). This provision states, in relevant part:

> For the efficient execution of the provisions of this Act, and in order to provide information for the use of Congress, the Commission may make such investigations as it deems necessary to ascertain the facts regarding the operations of boards of trade and other persons subject to the provisions of this Act.

Section 8(a)(1), 7 U.S.C. § 12(a)(1). Further, the CEA provides that:

> Whenever it shall appear to the Commission that any registered entity or other person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation, or order thereunder, or is restraining trade in any commodity for future delivery, or any swap the Commission may bring an action in the proper district court of the United States or the proper United States court of any territory or other place subject to the jurisdiction of the United States, to enjoin such act or practice, or to enforce compliance with this Act, or any rule, regulation or order thereunder, and said courts shall have jurisdiction to entertain such actions . . . .

Section 6c(a) of the CEA, 7 U.S.C. § 13a-1.

This investigation into whether the Walkers have engaged in violations of the CEA is within the CFTC's lawful jurisdiction. Based on information obtained by the CFTC, it appears that the Walkers may be commingling CBAL Capital customer funds with their personal funds, and/or utilizing such funds to engage in forex trading. If true, this would suggest that the Walkers have engaged in solicitation fraud and misappropriation of customer funds – all actions and activities that fall within the jurisdiction of the CFTC. *See* Sections 2(a)(1) and 4b(a) of the CEA, 7 U.S.C. §§ 2(a)(1) and 6b(a). This Court's jurisdiction is thereby properly invoked.

### 2. The Records Sought Are Relevant to the Investigation

As explained above, the purpose of the CFTC's investigation is to determine, among other things, whether the Walkers misappropriated customer funds in violation of Section 4b(a) of the CEA, 7 U.S.C. §§ 6b(a). From the information obtained to date by the CFTC, it appears that CBAL Capital customer funds were transferred into the personal accounts of the Walkers (the records of which are at issue here). The information contained in the account records sought may provide names of customers, the amount of money received from customers by the Walkers, how these customer funds were used or invested, and any other banks or financial institutions to which customer funds may have been transferred. As such, the records will assist the CFTC in determining whether the Walkers directly misappropriated customer money or otherwise violated

federal law. Accordingly, there is clear "reason to believe that the records being sought are relevant." *See* 12 U.S.C. § 3409(a)(2).

### 3. Notice May Result in Destruction of or Tampering with Evidence and/or Seriously Jeopardize the Investigation

The third and final component in demonstrating that a delay of customer notice is warranted is satisfied upon a showing that there is reason to believe specific events will occur as a result of such notice (*e.g.*, destruction of or tampering with evidence) or under the more general "catchall" provision, that the notice would "otherwise seriously jeopardiz[e] an investigation." 12 U.S.C. § 3409(a)(3). In this case, there is both reason to believe notice of the investigative subpoena will result in evidence destruction and tampering and that notice will seriously jeopardize the investigation.

#### a. Notice May Result in the Destruction of or Tampering with Evidence

The evidence sought by the investigative subpoenas is, principally, to determine the collection and disposition of funds that appear to have been fraudulently obtained and misappropriated by the Walkers. Evidence relevant to this investigation includes not only those copies of records maintained by Wells Fargo and Metabank, but evidence that may lie within the Walkers' control or the control of unknown persons who may be acting in concert with them. Compliance with the notification and mandatory delay provisions of the RFPA would present the Walkers and such other unknown persons, if any, with a substantial period of time in which to defeat the purposes of the investigative subpoenas. For example, the delay caused by notification would present an opportunity for the Walkers to expatriate funds (transferring them to other domestic or even off-shore bank accounts), to hide the funds in the form of cash or bearer bonds, or to otherwise dissipate the rest of the customer funds.

7

In addition, because the Walkers are not registered with the CFTC, there are no regulatory recordkeeping requirements under which the Walkers are otherwise obligated to retain and provide information to the CFTC. If the Walkers learn of the CFTC's investigation, they could destroy their own documents, which may include additional bank account and customer name information. Accordingly, there is "reason to believe that . . . notice will result in . . . destruction of or tampering with evidence. . . ." *See* 12 U.S.C. § 3409(a)(3)(C).

### b. Notice May Seriously Jeopardize the Investigation

Simply put, compliance with the mandatory delay occasioned by the notification requirements of the RFPA would essentially thwart the CFTC's ability to conduct an effective investigation. As described above, the CFTC has reason to suspect that the Walkers may be committing solicitation fraud and misappropriating customer, contrary to federal law. The CFTC needs access to the Walkers' personal financial records in order to determine certain crucial investigatory information regarding the flow of customer funds to and from their accounts. Alerting the Walkers to the investigation would undermine the CFTC's ability to review and analyze that information, undetected by Walkers, in order to determine if sufficient evidence exists that would warrant and justify the CFTC to request that their accounts be frozen in order to preserve any remaining customer funds. Notice of the subpoenas would allow the Walkers the opportunity to transfer any remaining customer funds to other accounts, including off-shore accounts, thus putting the funds outside the reach of the CFTC. The Walkers could also frustrate the CFTC's lawful investigation by fleeing (even leaving the United States), severing ties with customers, and possibly re-establishing a new scheme under a different name, exposing even more individuals to fraudulent activity. Accordingly, there is "reason to believe that notice will

result in . . . seriously jeopardizing [this] investigation . . ." *See* Section 1109 (a)(3)(E), 12 U.S.C. § 3409 (a)(3)(E).

C.  **CONCLUSION**

For the foregoing reasons, the CFTC respectfully requests that the Court find that the requirements of 12 U.S.C. § 3409 are present, and grant the CFTC's *Application for Ex Parte Order to Delay Notice of Investigative Subpoenas Pursuant to 12 U.S.C. §3409*.

Respectfully submitted,

*/s/ Alison Wilson/ecb*

Alison B. Wilson, DC Bar No. 475992
Chief Trial Attorney
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5523
awilson@cftc.gov

Dated: February 6, 2019